(USAO-GAN 6/10) Search Warrant

# United States District Court
### NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

Office and living area for Shreesh TIWARI that is labeled "LOBBY" at the Budgetel Inn located at 35 Carson Loop, Cartersville, Georgia 30121

APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT
Case number: 4:21-MC-029
UNDER SEAL

```
FILED IN CHAMBERS
U.S.D.C. ROME
Date: Jun 22 2021
JAMES N. HATTEN, Clerk
By: s/Kari Butler
Deputy Clerk
```

I, Jim Rives, being duly sworn depose and say:

I am a Special Agent of the Bureau of Immigration & Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have reason to believe that on the property described as:

Office and living area for Shreesh TIWARI that is labeled "LOBBY" at the Budgetel Inn located at 35 Carson Loop, Cartersville, Georgia 30121

in the Northern District of Georgia there is now concealed certain property, certain information, and certain data, namely,

See Attachment B, incorporated herein by reference ,

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 18 United States Code, United States Code, Section(s) Section 1591(2); Title 18 United States Code, United States Code, Section(s) Section 1589(a)(1); and Title 18 United States Code, United States Code, Section(s) Section 1952. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on attached sheet made a part hereof.

Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1

_____
Signature of Affiant
Jim Rives

June 22, 2021
Date

Rome, Georgia
City and State

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

AUSA Leanne Marek

**EXHIBIT 17**

```
ATTEST: A TRUE COPY
CERTIFIED THIS
Date: Jun 22 2021
JAMES N. HATTEN, Clerk
By: s/Kari Butler
Deputy Clerk
```

TIWARI000537

I, James Rives, depose and say under penalty of perjury:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the property located at 35 Carson Loop, Cartersville, Georgia 30121 (the Subject Premises), more particularly described in Attachment A. I request authorization to search for and seize the items enumerated in Attachment B, which constitute evidence, contraband, fruits and instrumentalities of violations of Sex Trafficking, in violation of Title 18, United States Code, Section 1591(2), Labor Trafficking, in violation of Title 18, United States Code, Section 1589 (a)(1), and violations of the Travel Act, in violation of Title 18, United States Code Section 1952.

2. I am a Special Agent (SA) of the United States Department of Homeland Security (DHS) Immigration & Customs Enforcement (ICE), Homeland Security Investigations (HSI) assigned to the Dalton, Georgia office, and have been employed by HSI since April 2007.

3. I have completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to being employed with ICE, I served as a police officer for seven years with the Alpharetta, Georgia Police Department. During my last two years with the Alpharetta Police Department, I served on a Federal Gang Task Force. I received training and have actual experience relating to federal criminal procedures, federal statutes, and DHS regulations.

4. As a Special Agent, I am responsible for enforcing federal criminal statutes, including Title 18, United States Code, Section 1591, commercial sex trafficking, Title 18, United States Code, Section 1589, forced labor, and Title 18 United States Code Section 1952, the Travel Act. I have received training and instruction in the investigation of sex and labor trafficking offenses, as well as related offenses, and have had the opportunity to conduct, coordinate, and participate in such investigations.

5. The statements contained in this Affidavit are based on my personal observations, my training and experience, as well as information obtained from other agents and witnesses. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. Rather, I have set forth only the facts that I find necessary to establish probable cause to believe that at the properties located at 35 Carson Loop, Cartersville, Georgia 30121, described in greater detail in Attachment A, will be found evidence, fruits, and instrumentalities of a violation or violations of Title 18, United States Code, Section 1591 (sex trafficking),Title 18, United States Code, Section 1589 (a)(1)(labor trafficking), and Title 18, United States Code, Section 1952 (the Travel Act), described in greater detail in Attachment B. I, therefore, respectfully request that the attached warrant be issued authorizing the seizure and search of the items listed in Attachment B.

TIWARI000539

## PROBABLE CAUSE

6. On February 10, 2021, the HSI National Hotline TIP received a call about potential adult sex trafficking in Cartersville, GA. Despite the caller wishing to remain anonymous, she left a phone number for law enforcement to contact her for additional questions. According to the caller, there may be other potential victims that are unaware the report has been made and may not identify themselves as victims of sex-trafficking. The caller reported that the potential trafficker is Shreesh TIWARI, who is the manager/operator of the Budgetel Inn located at the Subject Premises. The caller reported that on or about November 2020, the caller lost her house and had to move with her children to the Subject Premises. TIWARI forced her to engage in sex with him in exchange for housing. If the victim did not comply, she would be immediately evicted and homeless. In addition, the caller stated TIWARI would physically abuse her and threatened to withhold food if she refused to engage in commercial sex with him. According to the caller, TIWARI has video footage and pictures of the sexual acts with her stored on his cell phone. During the acts, she was aware that she was being filmed but thought it was part of the agreement and was in fear of being homeless if she did not comply.

7. On February 11, 2021, HSI SA Chip Reagan received information from the Henry County Police Department about a female located at the Haven House (located in Henry County) disclosing she was a victim of sex trafficking that occurred in Cartersville, GA. With the information obtained from Henry

3

County Police Department, I was able to determine that reporting victim located in Henry County and the HSI Tip Line caller mentioned above have the same phone number and are the same person. When I met with the victim in Henry County, I asked if she was the caller who reported the sex trafficking activity through the HSI Tip Line. The victim stated she was the caller and I went through the allegations reported on the HSI Tip Line with the victim and confirmed they were true and accurate as reported.

8. On February 16, 2021, I discovered that there were more than 80 incident reports in reference to the Budgetel Inn filed with the Bartow County Sherriff's Office ("BCSO") from 2019 to February 2021. The reported incidents vary from theft, narcotics, domestic issues and sexual harassment.

9. On February 16, 2021, I contacted the caller (documented in BCSO Report 2020-00024361) via the phone number listed on the incident report. The caller stated she was forced out to the motel due to her refusing to have sex with Shreesh TIWARI.

10. On February 16, 2021, I reviewed BCSO incident report 2020-00036298, titled as Solicitation of Sodomy. A BCSO Deputy documented the following:

"On Monday, December 28, 2020, I spoke with [caller] by phone in reference to solicitation of sodomy. [The caller] said, her boss / Shreesh TIWARI asked her to work late, and when she refused, he said he was going to fire her. Shreesh later said, if she would perform oral sex on him he would not fire her, and give her three days to think about it. [Caller]

4

said, it is an ongoing issue with Shreesh TIWARI requesting sexual favors when someone cannot pay."

11. On February 18, 2021, Victim Assistance Specialist (VAS) Alia El-Sawi and I met with M.H. at the Haven House located in Henry County, GA. M.H. confirmed that she had made the complaint to the HSI tip line and the Henry County Police Department as documented in paragraph 6 and 7. M.H. explained that on November 17, 2020, she lost her home in a fire. The Good Neighbor Homeless Shelter and a local church assisted M.H. and three of her children in getting a room at the Budgetel in Cartersville, GA. According to M.H., the owner / operator of the motel, Shreesh TIWARI, immediately began making sexual suggestive remarks to her. For example, M.H. explained that TIWARI would say "I don't want your money, come see me," meaning that she could perform sex acts on him in lieu of rent. M.H. explained that other women had been subject to this behavior and gave the name of another woman who was removed from motel for refusing to have sex with TIWARI.

12. M.H. explained that she fell a week behind in her weekly rent on room 125 and left the property to avoid having a confrontation with TIWARI. When M.H. returned, her belongings were in the dumpster. Being desperate for place to live, M.H. agreed to perform sex acts with TIWARI so that she could stay at the hotel. TIWARI put M.H. in room 215 and she met with him the next day. TIWARI told M.H. that she had to perform oral sex on him on Tuesday and Thursday at 9:30pm if she wanted to live at the motel. M.H. agreed and

TIWARI000542

according to M.H., TIWARI would record these acts with his cell phone. At times, TIWARI would force his penis violently in her mouth until she threw up. M.H. stated that these acts were also recorded and was able to describe TIWARI's cell phone as a black Galaxy S20. In addition, M.H. said that he would keep his laptop open and facing the couch where the sex acts would occur. M.H. stated the laptop has a camera and suspects he filmed the sex acts. The sex acts were mostly oral sex but include choking and paddling. This arrangement continued until mid-January of 2021.

13. During mid-January of 2021, M.H. told TIWARI that she needed to go to rehab due to her methamphetamine addiction. TIWARI supported M.H.'s decision and she was able to leave the Budgetel on January 26, 2021. According to M.H., TIWARI had her sign a written agreement that she would return once she was finished. After the agreement was made, Steve (LNU), (a maintenance man that works for TIWARI) took M.H. to Sober Living in Canton, GA. TIWARI also provided M.H. a $363.00 money order from Kroger to assist with her checking into Sober Living. Once M.H. disclosed what occurred at the motel, an "Out of Darkness" team responded and placed M.H. in a shelter. M.H. stated that Crystal (LNU) is performing sex acts with TIWARI to stay at the motel.

14. On February 23, 2021, I talked to S.T. via telephone about Bartow County Incident Report 2020-00024361. According to the report, S.T. claimed she was a

6

victim of sexual harassment with the offender being Shreesh TIWARI. The following was documented by the responding deputy:

> "Upon arrival I met with S.T. who stated Shreesh the owner of the Budgetel has been sexually harassing her. S.T. stated she arrived at the hotel on 08-19-20. She advised Shreesh invited her to his office and offered her food. She advised they had a consensual conversation and as she was leaving, he stated walk slow. She stated he has made remarks about sexual allegations and she stated she told him to stop."

15. On February 23, 2021, I contacted S.T. and she explained that she received assistance from the Good Neighbor Homeless Shelter Program and that they placed her at the Subject Premises. According to S.T., TIWARI made sexual comments to her and at one point, placed his hand in a chair that she was sitting down in to feel her buttocks. Once the money from the Good Neighbor Homeless Shelter Program ran out, he propositioned her for sex acts in lieu of rent. S.T. stated that she rather be homeless than have any sexual contact with TIWARI and left the Subject Premises.

16. On February 23, 2021, I met with K.W. upon learning she reported sex trafficking activity to Bartow County Code Enforcement. According to the Code Enforcement Officer, K.W. was reporting the activity occurring at the Subject Premises. According to K.W., the manager / operator of the Budgetel,

7

Shreesh TIWARI, removed her from the property earlier in the day, prior to meeting with agents.

17. K.W. stated she moved in the Budgetel on or about December 21, 2020 with her boyfriend and three children (ages 12, 8 and 2). K.W. explained they moved in the Budgetel with the assistance of the Good Neighbor Homeless Shelter. K.W. stated that TIWARI almost immediately started making sexual comments and suggestions to her and K.W. would simply ignore the remarks. Once the money from the Good Neighbor Homeless Shelter ran out, K.W. agreed to be a "housekeeper" at the motel in lieu of rent. According to K.W., she would work few hours a day (average of six) without an agreement of how much money an hour or a day of labor is worth. In addition to working in lieu of rent, TIWARI would occasionally give K.W. toiletry items. K.W. kept a spreadsheet of the hours she worked, items given, and the how far she was behind on rent.

18. K.W. stated that once she was only a week behind on rent ($300), she asked TIWARI for a paycheck since she felt that she was working more hours than being paid for since there was no agreement on how much money she makes for an hour of work. According to K.W., the agreement made by TIWARI was you had to work, or you would be homeless. K.W. stated that TIWARI grew angry at K.W.'s' defiance and would threaten to immediately remove her from the property if she did not work in lieu of rent. K.W. stated that TIWARI eventually called the Bartow County Sheriff's Office on her boyfriend to punish her for being defiant. Her boyfriend had an outstanding probation

TIWARI000545

warrant that TIWARI knew about and told her he was going to call law enforcement due to her being defiant.

19. On February 20, 2021, K.W.'s boyfriend was arrested at the Budgetel. On February 23, 2021, TIWARI removed her from the Subject Premises.

20. In addition, K.W. stated that she knows there are women at the Subject Premises who engage in sex acts with TIWARI to stay at the motel to prevent from being homeless.

21. On May 5, 2021, I interviewed J.R. after learning that she had reported labor trafficking activity occurring at the Subject Premises to Bartow-Cartersville Drug Task Force (BC-DTF). According to J.R., she moved in the Subject Premises on or about March 17, 2021. Once she moved in, TIWARI made a verbal agreement with her to work on the property in lieu of rent which is $375.00 a week. Once J.R. moved in, she was forced to work from 8:30 am to 5:30 pm, seven (7) days a week. During that time, she was only paid $20.00. J.R. explained that she was afraid if she did not work as instructed by TIWARI, that he would immediately remove her from the property, and she would be homeless. J.R. stated that TIWARI made threats to have her removed when she complained.

22. On May 1, 2021, J.R. stated that she was cleaning the maintenance man's room, Dan (LNU), when she was poked by a needle used for injecting methamphetamine. J.R. stated that she was very upset as the needle had traces of blood. J.R. told TIWARI that she was quitting the cleaning job and TIWARI

9

became irritated and immediately removed her from the property. J.R. was not able to collect her belongings due to TIWARI preventing her from accessing her room. J.R. stated that she knows women at the Subject Premises who engage in sex acts with TIWARI to stay at the motel in order to prevent from being homeless. They are scared that if they don't comply, TIWARI will remove them from the property as well. J.R. provided the names of Abbi (LNU) and April (LNU) who are having sex with TIWARI in lieu of paying rent.

23. On May 12, 2021, I interviewed K.M. upon learning from the Bartow County Sheriff's Office that she reported being a victim of labor trafficking at the Subject Premises. According to K.M., she moved in the Budgetel in March of 2021. Upon moving in, TIWARI made a verbal agreement with her to work at the property in lieu of paying rent. K.M. explained that she was afraid if she did not work as instructed by TIWARI, that he would immediately remove her from the property, and she would be homeless. After a few weeks of working, K.M. realized that she was working more hours than what would cover the weekly rent and therefore should be making money in addition to covering rent. TIWARI refused to pay K.M. and she left the Subject Premises.

24. During the interview, K.M. stated that she knows women at the Budgetel who are rumored to be engaging in sex acts with TIWARI to stay at the motel in order to prevent from being homeless. K.M. provided the names of A. (LNU)

TIWARI000547

and A. (LNU). According to K.M., these women work as a housekeeper and at the front desk at the Subject Premises.

25. On June 14, 2021, I observed a black Mercedes 350 parked in front of the Budgetel Inn, under the awning, directly in front of the lobby that also serves as the office and living area for TIWARI. The Mercedes was bearing New Jersey tag K41GVP. A check of the tag returned to Shruti TIWARI of 42B Crestwood Parkway, Whiting, New Jersey.

## CONCLUSION

26. Based on the foregoing information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 1591(2) (Sex Trafficking), Title 18, United States Code, Section 1589 (a)(1)(Labor Trafficking), and Title 18, United States Code, Section 1952 (the Travel Act) is located on the premises described in Attachment A, and that this evidence, listed in Attachment B, is contraband, the fruits of crime, or things otherwise criminally possessed, and/or is property which is or has been used as the means of committing the foregoing offenses. I therefore respectfully request that the attached warrant be issued authorizing the search for and seizure of the items listed in Attachment B.

TIWARI000548

## ATTACHMENT A

The subject premises is located at 35 Carson Loop, Cartersville, Georgia 30121. The motel office is described as a two-story motel with a blue roof. The office and living area for Shreesh TIWARI is in the front and is labeled "LOBBY" in bold black letters on a white sign directly in front of the door under the overhang.



12

TIWARI000549

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

### A. Evidence, Fruits, and Instrumentalities of the Subject Offenses

The items to be seized from the SUBJECT PREMISES are the following evidence, fruits, and instrumentalities of violations of Title 18, United States Code Section 1591, Title 18, United States Code, Section 1589 (a)(1), and Title 18 United States Code Section 1952 (the SUBJECT OFFENSES) described as follows:

1. Computers, cellular telephones, tablets, storage media, and related electronic equipment used to access, transmit, or store information relating to the SUBJECT OFFENSES.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereafter, "COMPUTER"):

    a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c. evidence of the lack of such malicious software;

    d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

TIWARI000550

    g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h. evidence of the times the COMPUTER was used;

    i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k. records of or information about Internet Protocol addresses used by the COMPUTER;

    l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    m. contextual information necessary to understand the evidence described in this attachment.

3. Records, information, and items relating to violation of the SUBJECT OFFENSES including:

    a. Records, information, and items relating to the occupancy or ownership of the SUBJECT PREMISES including utility and telephone bills, mail envelopes, or addressed correspondence;

    b. Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

    c. Records and information relating to the identity or location of the persons suspected of violating the SUBJECT OFFENSES; and

    d. Records and information relating to sex trafficking and labor trafficking including correspondence, communications, photographs, videos, and records that could assist in victim identification.

    e. Records and information relating to payments made to Budgetel Inn employees.

14

4. Evidence of sex trafficking by coercion to include photographs, videos, condoms, and illegal drugs used for sedation.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

### B. Search and Seizure of Electronically Stored Information

The items to be seized from the SUBJECT PREMISES include any computer devices, storage media, and related electronic equipment that may contain or constitute fruits, evidence, and/or instrumentalities of the SUBJECT OFFENSE falling within the categories set forth in Section A above. In lieu of seizing any such computer devices, storage media, and related electronic equipment, this warrant also authorizes their copying for later review.

To facilitate this review, the items to be seized from the SUBJECT PREMISES also include:
1. Any items or records needed to access the data stored on any seized or copied computer devices, storage media, and related electronic equipment, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

15

TIWARI000552

2. Any items or records that may facilitate a forensic examination of any seized or copied computer devices, storage media, and related electronic equipment, including but not limited to any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

3. Any records or other items which evidence ownership, control, or use of, or access to any seized or copied computer devices, storage media, and related electronic equipment, including but not limited to sales receipts, warranties, bills for internet access, handwritten notes, registry entries, configuration files, saved usernames and passwords, user profiles, email contacts, and photographs.

Any materials seized under this Section B that are later determined not to contain or constitute fruits, evidence, and/or instrumentalities of the SUBJECT OFFENSES falling within the categories set forth in Section A above will be returned to the SUBJECT PREMISES within 60 days of their seizure.

C. Review of ESI

Following seizure of any computer devices and storage media and/or the creation of forensic image copies, law enforcement personnel (which may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);
- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;
- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

TIWARI000553

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the computer was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Sections A and B of this Attachment. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

**D. Return of ESI**

Law enforcement personnel will review the electronic devices and, if law enforcement personnel determine that the electronic devices are not necessary to retrieve and preserve the data, and the items are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), law enforcement personnel will return these items within 60 days of the seizure, unless further order of the Court is obtained. Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel has determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

1. Computers, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, cameras, film, cellular telephones or other video display and storage devices that can access, record, store, and/or display images or videos of child pornography or child erotica or information pertaining to an interest in child pornography or sexual activity with minors.

17

TIWARI000554

2. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, peer-to-peer software.

3. In any format and medium, all originals, computer files, copies, and negatives of child pornography and child erotica.

4. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography or other activities involving the sexual exploitation of children.

5. Any and all diaries, address books, or other lists of names and addresses of individuals who may have been contacted by an occupant of the premises, by use of the computer or by other means, for the purpose of distributing or receiving child pornography or otherwise engaging in the sexual exploitation of children.

6. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that pertain to:

    (a) accounts with an Internet Service Provider;

    (b) online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage; or

    (c) occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

TIWARI000555