IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| S.T., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION FILE |
| | ) NO. 4:24-CV-00225-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) |
| BUDGETEL, and SRINIVAS | ) |
| BOLLEPALLI, | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiff, by and through counsel, and Responds to

Defendants' Motion for Summary Judgment, showing this Court as follows:

### INTRODUCTION

Defendants' motion baldly asks this Court to do the jury's job, weigh

Defendant's cherry-picked evidence and find Plaintiff's own testimony not credible.

"However, the court will not make credibility determinations or weigh the parties'

evidence." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024).

Rather, the Court must do the opposite, and view "all facts in the record in the light

most favorable to the nonmovant and drawing all inferences in her favor." *Id*. And

Plaintiff testified in detail about the sexual horrors inflicted on her by Defendants'

manager, both by force and under threat of eviction. (Ex. A, S.T. Dep., 151:25-152:18; 155:14-24). That evidence is not isolated either. Tiwari pled guilty to doing exactly what Plaintiff testified he did to her to at least seven other victims, using his power at Defendants' motel to threaten eviction (and worse) in order to sexually victimize numerous vulnerable women at the Defendant's motel.[1]

In support of their claim that Plaintiff was not sex trafficked by Tiwari, Defendants rely exclusively on Plaintiff's initial statements to law enforcement in which she reported some (but not all) of what she endured at their motel. But Plaintiff testified in her deposition exactly why she did not disclose every detail to law enforcement in the early aftermath of her trafficking and assault. Department of Homeland Security lead investigator and Special Agent Jim Rives testified that he was not surprised that Plaintiff waited to disclose all of the factual details of her ordeal, as it is not at all uncommon for victims to wait to disclose. (Ex. B, Rives Dep., 81:19-24; 94:18-95:2; 107:3-25). And of course, the fact that sexual abuse

---

[1] Such *modus operandi* evidence is admissible for many purposes under the TVPRA, including pattern and practice, knowledge, identity, and lack of mistake. *See Treminio v. Crowley Mar. Corp.*, 3:22-cv-174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024), *reconsideration denied,* 3:22-cv-174, 2024 WL 1050514 (M.D. Fla. Mar. 11, 2024) (collecting cases).

victims take years to report has been well-known and studied for decades, and is the

very reason why the TVPRA has a 10-year or longer statute of limitations.[2]

Contrary to the allegations in Defendants' motion, Plaintiff recounted her sex

trafficking ordeal to Agent Rives in a phone call early in his investigation, and again

during an in-person meeting later in the investigation. (Ex. A, S.T. Dep., 169:12-23;

171:15-23; 249:14-23). She also told her trusted family members what happened to

her at the hands of Defendants' manager. (Ex. A, S.T. Dep., 106:2-20; 175:23-

176:6). And she testified about her trafficking in excruciating detail for more than

five hours in her deposition.

Finally, and incredibly, Defendants' motion for summary judgment admits a

trial is warranted on all counts of Plaintiff's Complaint. Defendants' motion shows

there is undisputed evidence proving both sex trafficking *and* sexual assault. But

still, it is important to note that Defendants *did not move for summary judgment on*

---

[2] Defendants' position, that abuse left unreported is *de facto* not actionable would create the abhorrent result that victims of sexual abuse, including most often children, would be foreclosed from pursuing the legal remedies created by Congress, including the TVPRA, because their non-reporting would be treated as conclusive, despite the fact that non-reporting is a common and well-known phenomenon. 2 Mod. Sci. Evidence § 14:16 (2025-2026 Edition) ("Data from numerous studies also consistently show that the majority of victims do not report to the police. In large national studies of community samples of women, between 16% and 20% of victims reported to the police.[18] In recent (2015-2020) NCVS data, between 23% and 40% of those who said they had been raped or sexually assaulted reported the assault to the police.").

*most of Plaintiff's claims*, including, but not limited to, her very significant claims that Defendants failed to exercise ordinary care in keeping their premises safe pursuant to O.C.G.A. § 51-3-1, that Defendants are liable to Plaintiff under a theory of nuisance, that they are vicariously liable for their on-site manager's actions, that Defendants negligently hired, trained, supervised, and retained their employees and agents, including Tiwari, that they negligently entrusted the subject motel to Tiwari, that they are liable to Plaintiff for negligent and intentional infliction of emotional distress, that they are liable for Plaintiff's false imprisonment pursuant to O.C.G.A. § 51-7-20, or that they are liable to her for attorneys' fees and punitive damages.[3]

The only element Defendants' motion for summary judgment argues is not met is that Plaintiff is a "sex trafficking victim." But that is not an element of any claim other than Plaintiff's TVPRA claim. And as shown herein, Defendants are wrong, their Motion should be denied, and all claims should proceed to a jury.

---

[3] Because Defendants have not moved for summary judgment on these claims, or the remaining TVPRA factors as set forth in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021), Plaintiff will not address them herein. Should the Court elect to sua sponte consider summary judgment on these claims or the other TVPRA factors, Plaintiff respectfully requests the opportunity to file an additional brief addressing these issues.

## STATEMENT OF MATERIAL FACTS

**1. Operation of the Motel and Defendants' Site Manager Shreesh Tiwari.**

Defendants Carson Loop ESM, LLC and Srinivas Bollepalli owned, operated, maintained, and controlled the Budgetel. (Ex. C, Bollepalli Dep., 13:1-14; 21:12-14; 136:1). Defendants admit that they benefitted financially and received financial compensation from the renting of rooms at the subject Budgetel. (Ex. D, Defendants' Responses to Requests for Admission, ¶¶ 23, 24).

In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. C, Bollepalli Dep., 24:6-14; 39:8-10). They called one reference but did no other background check, and provided Tiwari with no training apart from an eight-page presentation. (Ex. C, Bollepalli Dep., 82:8-24, 83:3-23). Defendants provided all the supplies for the motel, including everything Tiwari needed to do his job. (Ex. C, Bollepalli Dep., 40:15-41:7). Tiwari managed the motel around the clock, 7 days a week, and he was not allowed to work anywhere else. (Ex. C, Bollepalli Dep., 79:10-24). Tiwari had no decision-making authority and no authority to set rules or policies and procedures for the motel – rather, he acted at Defendants' direction. (Ex. C, Bollepalli Dep., 81:2-13; 146:10-23). In addition to his other duties, Tiwari was empowered by Defendants to evict people from the motel. (Ex. C, Bollepalli Dep., 89:9-12).

Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. B, Rives Dep., 21:7-14, Ex. C, Bollepalli Dep., 38:8-18; 39:5-7; 136:1).

Everyone working at the Budgetel was employed by Carson Loop ESM, LLC, including all housekeepers, front desk and maintenance employees, and site manager Tiwari. (Ex. C, Bollepalli Dep., 54:5-11). Prior to Tiwari's arrest for sex and labor trafficking in 2021, Bollepalli did not know anything about human trafficking and he never provided any of his employees, including Tiwari, with any training on how to identify and prevent human trafficking. (Ex. C, Bollepalli Dep., 85:8-86:4).

2. **Defendants' Employee and Agent Trafficked Plaintiff for Sex and Sexually Assaulted Her at the Motel.**

In August of 2020, Plaintiff and her family were homeless after Plaintiff was laid off from her job as a tax preparer in the wake of the COVID pandemic. (Ex. A, S.T. Dep., 60:4-61:4; 89:8-11). She applied to the Rapid Re-Housing program for assistance, and the Rapid Re-Housing program paid for Plaintiff and her family to rent a room at the Budgetel. (Ex. A, S.T. Dep., 62:20-25; 65:2-66:1). Plaintiff's case manager from Rapid Re-Housing met her at the Budgetel and paid for Plaintiff's room there. (Ex. A, S.T. Dep., 64:5-17; 66:2-20). Plaintiff and her family moved into the Budgetel and almost immediately, Defendants' manager Shreesh Tiwari sexually assaulted Plaintiff and began sex trafficking her.

6

Specifically, the day after she arrived at the motel, Defendants' manager instructed Plaintiff to sit down in the office, and when she did, he put his hand on the chair under her and began fondling her vagina and buttocks. (Ex. A, S.T. Dep., 144:3-23). Plaintiff repeatedly told Defendants' manager to stop and rebuffed his sexual advances. (Ex. A, S.T. Dep., 144:3-23). He then told Plaintiff that a truck driver named Hoyt was a very good customer at the motel, that Hoyt needed female companionship, and threatened to evict Plaintiff and her family if she did not comply. (Ex. A, S.T. Dep., 144:3-23; 149:9-20). Plaintiff, with no choice other than to face eviction and homelessness, went to Hoyt's room where she found Hoyt and a prostitute named Carmen, who left shortly after Plaintiff arrived to take money to Defendants' manager Tiwari. (Ex. A, S.T. Dep., 141:3-8; 145:7-24). Plaintiff was then threatened with eviction a second time if she did not perform oral sex and manually stimulate Hoyt's penis with her hand, and she reluctantly complied. (Ex. A, S.T. Dep., 140:2-142:9; 144:3-23).

The next day, Defendants' manager forced Plaintiff to touch his penis and thereafter threatened Plaintiff with eviction if she did not either perform oral sex on him or have sexual intercourse with him. (Ex. A, S.T. Dep., 151:25-152:18; 155:14-24). Trapped and with no choice, Plaintiff performed oral sex on Defendants' manager in the motel lobby's restroom. (Ex. A, S.T. Dep., 151:25-152:18; 155:14-

24). There, Defendants' manager forced Plaintiff's head repeatedly on his penis until he ejaculated. (Ex. A, S.T. Dep., 151:25-152:18). Fearing continued abuse and forced sexual contact with Defendants' manager, Plaintiff went to the police on her sixth day at the motel. (Ex. A, S.T. Dep., 154:24-155:6; 158:4-11). Her fifteen-year-old son was with her at the police station, so in order to shield him from the horrors that she had endured, Plaintiff reported at that time that Defendants' manager made sexual remarks and propositioned her for sex, but she did not reveal all of the details of the forced sexual contact. (Ex. A, S.T. Dep., 159:10-13; 222:19-223:17). When she returned to the motel, Defendants' manager evicted her for rebuffing his continued sexual advances and for reporting him to the police. (Ex. A, S.T. Dep., 161:18-24).

### 3. Tiwari's Trafficking and Abuse of Plaintiff and Others was Open and Obvious to Defendants.

Defendant Bollepalli was at the motel every other day. (Ex. B, Rives Dep., 21:7-14). Tiwari kept a gun in the motel safe that Bollepalli had access to. (Ex. C, Bollepalli Dep., 104:21-23, 113:4-25). Tiwari also used Defendants' computers – that Bollepalli had full access to – to document his trafficking activities. (Ex. C, Bollepalli Dep., 119:21-120:10). Defendants' computers contained photographs and videos of victims performing oral sex on Tiwari, screen shots of sexually suggestive texts messages between Tiwari and a victim, photographs of several trafficking

victims, and payroll files, among other evidence that was readily available to Defendants. (Ex. E, DHS Report ROI DG15HR21DG0002-053). DHS's investigation revealed that at least five to seven women were trafficked by Tiwari at the Budgetel. (Ex. B, Rives Dep., 29:16-30:10; Ex. F, Affidavit).

**4. Crime at the Budgetel was Foreseeable to Defendants.**

Beginning in 2016, Bollepalli visited the local police station in December of each year and asked for all police reports for the yearly crime at the Budgetel. (Ex. C, Bollepalli Dep., 30:8-31:22). The police gave him the reports each year and he read them. (Ex. C, Bollepalli Dep., 30:8-31:22). These reports reflected numerous calls for service for a variety of crimes at the motel, including but not limited to theft, narcotics, domestic violence, prostitution, and sexual harassment. (Ex. B, Rives Dep., 15:9-21; Ex. G, Families Face Uncertain Future Following Mass Motel Eviction, The Daily Tribune News (Oct. 16, 2019). DHS conducted numerous narcotics investigations at the Budgetel and it is located in a high crime area. (Ex. B, Rives Dep., 19:17-22, 88:13-18; 137:12-18).

Beginning in 2016, Bollepalli read the Google reviews of the Budgetel every month. (Ex. C, Bollepalli Dep., 121:17-21). There, prior to Plaintiff's trafficking, Bollepalli learned, among other things, that the motel was "not clean, and drug infested", "disgusting… [a]lmost everyone is a drug addict", "[t]he people here are

bad people and a big problem with drugs", "drug addicts and prostitutes", "[i]t looked like a cross between a crack house and a no-tell motel", "too much drug activity & just didn't feel safe sitting there", "[m]en coming and going in the room next to ours, all night", "knife mark's in the wall", "people fighting in the parking lot", "[t]his is the scariest place I've ever stayed!", and "if you need DRUG'S Budgetel is the place to go oh hell forgot the most important things WHORE'S - Homewreakin Female's and Male's all over the place." (Ex. H, Google Reviews).

That isn't all that Defendants knew about. In 2019, almost 200 people were evicted from the motel after it was shut down by the Georgia Department of Public Health. The motel has a reputation with the local police forces as "one of the most crime-ridden areas in the county." (Ex. G). In 2018 alone, there were more than 190 police incidents there, and by the time it was shut down in October 2019, there had already been 177 police incidents. *Id*. Residents with outstanding warrants included one wanted for child pornography. *Id*. In 2019, when the motel was shut down, Bartow County Commissioner Steve Taylor stated, "We've had dozens of arrests from drugs and prostitution out there, and the living conditions for those children are horrible. That's the reason for this action to take place now." *Id*. Taylor went on to say that no matter where the displaced children ended up, it would be an improvement over the Budgetel. *Id*.

Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug activity. (Ex. B, Rives Dep., 21:7-14). Despite the known and extensive crime problems at the Budgetel, Defendants never hired security. (Ex. C, Bollepalli Dep., 62:18-24). Other than surveillance cameras and locking the lobby from 10:00 p.m. until 6:00 a.m., Defendants did nothing to keep their invitees safe. (Ex. C, Bollepalli Dep., 62:18-63:11).

### 5. Defendants Failed to Post the Required Human Trafficking Notice.

Beginning in 2013, all motels were required to post a human trafficking notice "in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees." O.C.G.A. § 16-5-47(b). Bollepalli does not know if such a notice was ever posted at the Budgetel. (Ex. C, Bollepalli Dep., 74:1-25).[4] If it was, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. C, Bollepalli Dep., 106:15-107:2). If it was ever posted at all, the notice was not posted where Plaintiff could see it. (Ex. C, Bollepalli Dep., 106:19-21). For these reasons, and the reasons stated below, there questions of fact for a

---

[4] It is unlikely that such a notice was posted, since Bollepalli did not know what human trafficking was until the government raided the motel and arrested Defendants' manager for human trafficking. (Ex. C, Bollepalli Dep., 143:7-24).

jury as to each of Plaintiff's claims, and this Court should deny Defendants' Motion

in its entirety.

**ARGUMENT AND CITATION TO AUTHORITY**

I.      **Summary Judgment Standard.**

Summary judgment may be granted only where "the movant shows that there

is no genuine dispute as to any material fact and [it] is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). This is not such a case. Defendants have not

met their burden, questions of fact exist, and summary judgment should be denied.

II.     **Defendants Admit the Undisputed Evidence in this Case Shows Sexual Assault and Sex Trafficking Against Plaintiff by its Manager.**

Defendants' own motion shows a jury trial is warranted on all of Plaintiff's

claims. Including, incredibly, Plaintiff's sex trafficking claims. Defendants tell the

Court that there is evidence in this case that its manager Tiwari "propositioned

[Plaintiff] for sex acts" and that Plaintiff "stated that she [would] rather be homeless

than have any sexual contact with [Tiwari] and left the Budgetel of her own free

will." Dkt. No. 57-10 at 2–3. Again, these are *Defendants'* asserted facts. Taking

Defendants' factual assertions at face value, that is evidence that Defendants'

manager propositioned Plaintiff for sex and that he did so under threat of eviction.

Otherwise, why would Plaintiff say she would "rather be homeless" in response? At

a minimum, the reasonable inference when viewed in the light most favorable to the

12

Plaintiff is that the proposition for sex was done under threat of eviction. **So, *Defendants* put forth evidence that their manager solicited Plaintiff for sex by threatening to evict her**. That conduct—*by itself*—is a completed violation of 18 U.S.C. § 1591, i.e., sex trafficking. Soliciting sex by coercion in exchange for something of value (the motel room) *is* sex trafficking. 18 U.S.C. § 1591(a). A completed sex act is not an element of the crime. *United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014) ("It is enough that Mozie "recruited" the victims in Counts 6 through 8 to engage in commercial sex acts even though they did not actually do so.").

Thus, Defendants miss the forest for the trees. When Defendants assert (erroneously) there is no evidence that Plaintiff was sex trafficked, what they are actually doing is conflating sex trafficking (a very broad crime that includes soliciting, recruiting, harboring, and other acts) with one specific sex act. But sex trafficking doesn't require a completed sex act. Sex trafficking is soliciting, recruiting, and a number of other actions with the intention to commit a sex act, whether that act is ever completed or not. When Defendants admit that their manager solicited sex from Plaintiff using coercion and the exchange of a room, Defendants admit there is evidence of Plaintiff's sex trafficking, because that's what sex trafficking is, among other things.

Additionally, and contrary to Defendants' brief, proving Plaintiff was a "sex trafficking victim" is not an element of proving that she was sexually assaulted due to Defendants' negligence and nuisance, as Plaintiff also alleged in her complaint. Dkt. No. 1 ¶¶ 27, 36, 41. In fact—and incredibly—Defendants' motion admits the fact that Shreesh Tiwari "engaged in "excessive sexual harassment . . . to include . . . touching [Plaintiff's] buttocks." Dkt. No. 57-10 at 3–4. To risk stating the obvious, such unwanted sexual touching as Defendants describe *is* sexual assault.[5] And Defendants were sued by Plaintiff for allowing sexual assault. Dkt. No. 1 ¶¶ 27, 36, 41. Thus, Defendants admit the undisputed evidence in this case warrants a trial for negligence and nuisance based on their manager sexually assaulting Plaintiff.

Defendants' main contention, that there is no evidence of a sexual act between Plaintiff and Defendants' manager, is also wrong, as shown above and below. But it is worth noting that even if Defendants were entirely correct, all of Plaintiffs' claims should survive summary judgment.

---

[5] O.C.G.A. § 16-6-22.1 ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.").

14

## III.    There are Facts from Which a Jury Could Easily Find that Plaintiff was a Victim of Sex Trafficking at Defendants' Motel.

The only basis for Defendants' Motion is their claim that Plaintiff was not a victim of sex trafficking at their motel. As discussed above, Defendants misunderstand what actions the crime of sex trafficking encompass. Still, Defendants are wrong that there is no evidence that their manager forced and coerced Plaintiff into a sexual act with him, as well as with a man that the manager sold Plaintiff to.

Defendants ignore Plaintiff's testimony in this regard and her explanation for why she did not disclose all the facts of her ordeal immediately. Specifically, Plaintiff testified that she was forced by Defendants' manager by threat of eviction to have oral sex and other sexual contact with a truck driver who was staying at the motel and that the truck driver paid Defendants' manager for Plaintiff's sexual services, and that she was forced to have oral sex with the manager by threat of eviction. Plaintiff admits that she did not disclose these forced sexual encounters to the Bartow County police because her fifteen-year-old son was with her at the time of her report. But Plaintiff told Agent Rives about her ordeal in a phone call early in his investigation and told him and his team all of the facts in detail during an in-person meeting later in the investigation. (Ex. A, S.T. Dep., 169:12-23; 171:15-23;

249:14-23). She also told her trusted family members what happened to her at the hands of Defendants' manager. (Ex. A, S.T. Dep., 106:2-20; 175:23-176:6).

While Agent Rives testified that his investigation did not show that Plaintiff was a sex trafficking victim at the motel, he testified that he is not surprised that Plaintiff only disclosed some of the facts to him and delayed disclosing others, as it is common for victims to delay disclosure.

Because there is a factual dispute as to Plaintiff's forced sexual encounters at the Budgetel, "only a jury can make the necessary credibility determinations to settle this 'he said, she said' dispute." *Prieto v. Collier Cnty.*, No. 2:13-CV-489-FTM-38CM, 2014 WL 4784330, at *6 (M.D. Fla. Sept. 24, 2014). *See also*, *Hodgetts v. City of Venice, Fla.*, 794 F. Supp. 2d 1265, 1271 (M.D. Fla. 2011). ("if the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied.'"). Defendants' Motion is accordingly properly denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that this Court deny Defendants' Motion for Summary Judgment in its entirety.

This 20th day of February, 2026.

Respectfully submitted,

**LAW & MORAN**

/s/ Denise D. Hoying
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
*Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

**ANDERSEN, TATE & CARR, P.C.**

/s/ Patrick J. McDonough
Patrick J. McDonough
Georgia Bar No. 489855
Jonathan S. Tonge
Georgia Bar No. 303999
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***Brief in Opposition to Defendants'***

***Motion for Summary Judgment*** has been prepared with one of the following font

and point selections approved by the Court in L.R. 5.1.  Specifically, the above

mentioned pleading was prepared using Times New Roman font of 14 point size.


Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
*Attorney for Plaintiff*

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Denise@lawmoran.com

18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

S.T., )
)
    Plaintiff, )
)
v. ) CIVIL ACTION FILE
) NO. 4:24-CV-00225-WMR
CARSON LOOP ESM, LLC d/b/a )
BUDGETEL, and SRINIVAS )
BOLLEPALLI, )
)
    Defendants. )

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the

foregoing ***Brief in Opposition to Defendants' Motion for Summary Judgment***

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to:

Sean W. Martin
Stephen A. Swanson
Carr Allison
633 Chestnut St.
Suite 2000
Chattanooga, TN 36450

    This 20th day of February, 2026.

19

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Denise@lawmoran.com

20