IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| S.T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00225-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The following statements create material questions of fact regarding

Defendants' Motion for Summary Judgment, and the Motion should be denied:

1.

Defendants Carson Loop ESM, LLC and Srinivas Bollepalli owned,

operated, maintained, and controlled the Budgetel. (Ex. C, Bollepalli Dep., 13:1-

14; 21:12-14; 136:1).

2.

Defendants admit that they benefitted financially and received financial

compensation from the renting of rooms at the subject Budgetel. (Ex. D,

Defendants' Responses to Requests for Admission, ¶¶ 23, 24).

3.

In January of 2020, Defendants hired Shreesh Tiwari to be Budgetel's onsite manager after he responded to a Facebook ad. (Ex. C, Bollepalli Dep., 24:6-14; 39:8-10).

4.

They called one reference but did no other background check, and provided Tiwari with no training apart from an eight-page presentation.  (Ex. C, Bollepalli Dep., 82:8-24, 83:3-23).

5.

Defendants provided all the supplies for the motel, including everything Tiwari needed to do his job. (Ex. C, Bollepalli Dep., 40:15-41:7).

6.

Tiwari managed the motel around the clock, 7 days a week, and he was not allowed to work anywhere else. (Ex. C, Bollepalli Dep., 79:10-24).

7.

Tiwari had no decision-making authority and no authority to set rules or policies and procedures for the motel – rather, he acted at Defendants' direction. (Ex. C, Bollepalli Dep., 81:2-13; 146:10-23).

8.

In addition to his other duties, Tiwari was empowered by Defendants to evict people from the motel. (Ex. C, Bollepalli Dep., 89:9-12).

9.

Everything at the motel was under Bollepalli's control and he was at the motel every other day. (Ex. B, Rives Dep., 21:7-14, Ex. C, Bollepalli Dep., 38:8-18; 39:5-7; 136:1).

10.

Everyone working at the Budgetel was employed by Carson Loop ESM, LLC, including all housekeepers, front desk and maintenance employees, and site manager Tiwari. (Ex. C, Bollepalli Dep., 54:5-11).

11.

Prior to Tiwari's arrest for sex and labor trafficking in 2021, Bollepalli did not know anything about human trafficking and he never provided any of his employees, including Tiwari, with any training on how to identify and prevent human trafficking. (Ex. C, Bollepalli Dep., 85:8-86:4).

12.

In August of 2020, Plaintiff and her family were homeless after Plaintiff was laid off from her job as a tax preparer in the wake of the COVID pandemic. (Ex.

A, S.T. Dep., 60:4-61:4; 89:8-11).

13.

She applied to the Rapid Re-Housing program for assistance, and the Rapid

Re-Housing program paid for Plaintiff and her family to rent a room at the

Budgetel. (Ex. A, S.T. Dep., 62:20-25; 65:2-66:1).

14.

Plaintiff's case manager from Rapid Re-Housing met her at the Budgetel and

paid for Plaintiff's room there. (Ex. A, S.T. Dep., 64:5-17; 66:2-20).

15.

Plaintiff and her family moved into the Budgetel and almost immediately,

Defendants' manager Shreesh Tiwari sexually assaulted Plaintiff and began sex

trafficking her. Specifically, the day after she arrived at the motel, Defendants'

manager instructed Plaintiff to sit down in the office, and when she did, he put his

hand on the chair under her and began fondling her vagina and buttocks. (Ex. A,

S.T. Dep., 144:3-23).

16.

Plaintiff repeatedly told Defendants' manager to stop and rebuffed his sexual

advances. (Ex. A, S.T. Dep., 144:3-23).

4

17.

He then told Plaintiff that a truck driver named Hoyt was a very good customer at the motel, that Hoyt needed female companionship, and threatened to evict Plaintiff and her family if she did not comply.  (Ex. A, S.T. Dep., 144:3-23; 149:9-20).

18.

Plaintiff, with no choice other than to face eviction and homelessness, went to Hoyt's room where she found Hoyt and a prostitute named Carmen, who left shortly after Plaintiff arrived to take money to Defendants' manager Tiwari.  (Ex. A, S.T. Dep., 141:3-8; 145:7-24).

19.

Plaintiff was then threatened with eviction a second time if she did not perform oral sex and manually stimulate Hoyt's penis with her hand, and she reluctantly complied.  (Ex. A, S.T. Dep., 140:2-142:9; 144:3-23).

20.

The next day, Defendants' manager forced Plaintiff to touch his penis and thereafter threatened Plaintiff with eviction if she did not either perform oral sex on him or have sexual intercourse with him.  (Ex. A, S.T. Dep., 151:25-152:18; 155:14-24).

21.

Trapped and with no choice, Plaintiff performed oral sex on Defendants' manager in the motel lobby's restroom. (Ex. A, S.T. Dep., 151:25-152:18; 155:14-24).  There, Defendants' manager forced Plaintiff's head repeatedly on his penis until he ejaculated.  (Ex. A, S.T. Dep., 151:25-152:18).

22.

Fearing continued abuse and forced sexual contact with Defendants' manager, Plaintiff went to the police on her sixth day at the motel. (Ex. A, S.T. Dep., 154:24-155:6; 158:4-11).

23.

Her fifteen-year-old son was with her at the police station, so in order to shield him from the horrors that she had endured, Plaintiff reported at that time that Defendants' manager made sexual remarks and propositioned her for sex, but she did not reveal all of the details of the forced sexual contact.  (Ex. A, S.T. Dep., 159:10-13; 222:19-223:17).

24.

When she returned to the motel, Defendants' manager evicted her for rebuffing his continued sexual advances and for reporting him to the police.  (Ex.

A, S.T. Dep., 161:18-24).

25.

Defendant Bollepalli was at the motel every other day. (Ex. B, Rives Dep., 21:7-14).

26.

Tiwari kept a gun in the motel safe that Bollepalli had access to. (Ex. C, Bollepalli Dep., 104:21-23, 113:4-25).

27.

Tiwari also used Defendants' computers – that Bollepalli had full access to – to document his trafficking activities. (Ex. C, Bollepalli Dep., 119:21-120:10).

28.

Defendants' computers contained photographs and videos of victims performing oral sex on Tiwari, screen shots of sexually suggestive texts messages between Tiwari and a victim, photographs of several trafficking victims, and payroll files, among other evidence that was readily available to Defendants. (Ex. E, DHS Report ROI DG15HR21DG0002-053).

29.

DHS's investigation revealed that at least five to seven women were trafficked by Tiwari at the Budgetel. (Ex. B, Rives Dep., 29:16-30:10; Ex. F,

Affidavit).

30.

Beginning in 2016, Bollepalli visited the local police station in December of

each year and asked for all police reports for the yearly crime at the Budgetel. (Ex.

C, Bollepalli Dep., 30:8-31:22).

31.

The police gave him the reports each year and he read them. (Ex. C,

Bollepalli Dep., 30:8-31:22).

32.

These reports reflected numerous calls for service for a variety of crimes at

the motel, including but not limited to theft, narcotics, domestic violence,

prostitution, and sexual harassment. (Ex. B, Rives Dep., 15:9-21; Ex. G, Families

Face Uncertain Future Following Mass Motel Eviction, The Daily Tribune News

(Oct. 16, 2019).

33.

DHS conducted numerous narcotics investigations at the Budgetel and it is

located in a high crime area. (Ex. B, Rives Dep., 19:17-22, 88:13-18; 137:12-18).

34.

Beginning in 2016, Bollepalli read the Google reviews of the Budgetel every

month. (Ex. C, Bollepalli Dep., 121:17-21).

35.

There, prior to Plaintiff's trafficking, Bollepalli learned, among other things, that the motel was "not clean, and drug infested", "disgusting… [a]lmost everyone is a drug addict", "[t]he people here are bad people and a big problem with drugs", "drug addicts and prostitutes", "[i]t looked like a cross between a crack house and a no-tell motel", "too much drug activity & just didn't feel safe sitting there", "[m]en coming and going in the room next to ours, all night", "knife mark's in the wall", "people fighting in the parking lot", "[t]his is the scariest place I've ever stayed!", and "if you need DRUG'S Budgetel is the place to go oh hell forgot the most important things WHORE'S -Homewreakin Female's and Male's all over the place." (Ex. H, Google Reviews).

36.

That isn't all that Defendants knew about. In 2019, almost 200 people were evicted from the motel after it was shut down by the Georgia Department of Public Health. The motel has a reputation with the local police forces as "one of the most crime-ridden areas in the county." (Ex. G).

37.

In 2018 alone, there were more than 190 police incidents there, and by the

time it was shut down in October 2019, there had already been 177 police

incidents. *Id*.

38.

Residents with outstanding warrants included one wanted for child

pornography. *Id*.

39.

In 2019, when the motel was shut down, Bartow County Commissioner

Steve Taylor stated, "We've had dozens of arrests from drugs and prostitution out

there, and the living conditions for those children are horrible. That's the reason for

this action to take place now." *Id*.

40.

Taylor went on to say that no matter where the displaced children ended up,

it would be an improvement over the Budgetel. *Id*.

41.

Bollepalli instituted a 10:00 p.m. curfew at the motel due to its known drug

activity. (Ex. B, Rives Dep., 21:7-14).

42.

Despite the known and extensive crime problems at the Budgetel,

Defendants never hired security. (Ex. C, Bollepalli Dep., 62:18-24).

10

43.

Other than surveillance cameras and locking the lobby from 10:00 p.m. until 6:00 a.m., Defendants did nothing to keep their invitees safe. (Ex. C, Bollepalli Dep., 62:18-63:11).

44.

Beginning in 2013, all motels were required to post a human trafficking notice "in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees." O.C.G.A. § 16-5-47(b). Bollepalli does not know if such a notice was ever posted at the Budgetel. (Ex. C, Bollepalli Dep., 74:1-25).

45.

If it was, it was posted on a bulletin board where only the site manager, Bollepalli, and front desk employees were allowed to go. (Ex. C, Bollepalli Dep., 106:15-107:2).

46.

If it was ever posted at all, the notice was not posted where Plaintiff could see it. (Ex. C, Bollepalli Dep., 106:19-21).

47.

Plaintiff told Agent Rives about her ordeal in a phone call early in his

investigation and told him and his team all of the facts in detail during an in-person meeting later in the investigation. (Ex. A, S.T. Dep., 169:12-23; 171:15-23; 249:14-23).

48.

Plaintiff also told her trusted family members what happened to her at the hands of Defendants' manager. (Ex. A, S.T. Dep., 106:2-20; 175:23-176:6).

49.

Department of Homeland Security lead investigator and Special Agent Jim Rives testified that he was not surprised that Plaintiff waited to disclose all of the factual details of her ordeal, as it is not at all uncommon for victims to wait to disclose. (Ex. B, Rives Dep., 81:19-24; 94:18-95:2; 107:3-25).

This 20th day of February, 2026.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Denise D. Hoying
Georgia Bar No. 236494
*Attorneys for Plaintiff*

563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710
Pete@lawmoran.com
Mike@lawmoran.com
Denise@lawmoran.com

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
Jonathan S. Tonge
Georgia Bar No. 303999
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680
pmcdonough@atclawfirm.com
jtonge@atclawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*** has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

*<u>/s/ Denise D. Hoying</u>*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| S.T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 4:24-CV-00225-WMR |
| CARSON LOOP ESM, LLC d/b/a | ) | |
| BUDGETEL, and SRINIVAS | ) | |
| BOLLEPALLI, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the

foregoing ***PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN***

***OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT***

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to:

Sean W. Martin
Stephen A. Swanson
Carr Allison
633 Chestnut St.
Suite 2000
Chattanooga, TN 36450

This 20th day of February, 2026.

15

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

563 Spring Street, NW
Atlanta, GA 30308
(404) 814-3700